THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
THATEDUS WILLIAMS, Defendant-Appellant.

First District (2nd Division)   Nos. 86—1081, 86—1579, 86—2070 cons.

Opinion filed October 25, 1988.

Paul P. Biebel, Jr., Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Kim A. Novi, and Ado L. Rugai, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

This case involves three consolidated appeals: Appeal No. 86—1081 is from a conviction after a bench trial of one count of attempted armed robbery and three counts of aggravated battery; appeal No. 86—1579 is from a judgment of guilty on a plea of guilty to armed robbery, armed violence and aggravated battery; appeal No. 86—2070 is from a judgment based on a revocation of probation. The revocation was based on the defendant's convictions after the bench trial and his plea of guilty.

He was sentenced by Judge Francis J. Mahon on the bench trial conviction to a term of eight years for armed robbery and five years for aggravated battery and on the plea of guilty to a term of eight years for attempted armed robbery, eight years for armed violence and five years for aggravated battery. All sentences were to run concurrently.

Judge Steven A. Schiller, after revoking the defendant's probation, sentenced him to four years for robbery to run consecutively to the terms imposed by Judge Mahon. He now contends that his conviction after a bench trial should be reversed, that his plea of guilty should be vacated and, therefore, that his revocation of probation should be reversed.

We will first consider his claim that the evidence heard at the bench trial did not establish his guilt beyond a reasonable doubt.

On February 10, 1985, at approximately 6:35 p.m., McKinley Murray went to a grocery store to buy beer. After leaving the store he was walking in the vicinity of 1316 West 14th Street in Chicago when two men "appeared from nowhere and told [him] it was a stick-up." One of them had a revolver. The armed man was closest to Murray, about four feet away. The second man, who appeared to be unarmed, stood about four feet in back. Murray stood facing the two men for what he estimated was 2½ to 3 minutes. He told them he would give them the money he had. As he began to lower his right hand to get the money, the man with the gun shot him in the right arm between the wrist and the elbow.

Murray pulled a revolver from his jacket pocket and fired all six shots at both men. The first two hit the first man, who died. He was Rodney Kirkwood. The other man ran away. Murray later identified the defendant as the second man.

The defendant was admitted to the University of Illinois Hospital shortly after 7 p.m. with four gunshot wounds, one in the left forearm, the right hip, the lower left back and left buttocks.

He was questioned by detectives and an assistant State's Attorney, who took a written statement from him. The defendant later refused to sign it. That statement was introduced in evidence but has not been made part of the record.

The defendant testified that he was on his way to his grandmother's house at 74th and Wentworth. He was taking a shortcut through various gangways on his way to Racine Avenue, where he could take the bus. While he was walking down the street in the 1300 block on West 14th Street at around 7 p.m., a man in his twenties approached, called him by his nickname and asked if the defendant was the man that stuck him up. The defendant shook his head and kept walking. Somebody called his name out and said, "T.J.," his nickname, and when he turned to look, two individuals were shooting at him. He had known the deceased, Rodney Kirkwood, who knew the defendant's nickname, for two or three years, but he did not see Rodney Kirkwood that night. After he was shot, he ran to a friend's house and asked him to call the police. He said that he had refused to sign the statement because there was a discrepancy in it. The discrepancy was that he allegedly said that he saw two individuals in their twenties that came back and started shooting at him. We infer that his statement to the police is substantially the same as his trial testimony in all other respects.

The defendant was convicted on the basis of the accountability statute of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)), which requires that the defendant solicited, aided, abetted, agreed, or attempted to aid another person in the planning or commission of an offense; such participation must have taken place either before or during the commission of the offense; and such participation must have been with the intent to promote or facilitate the commission of the offense.

■ Accountability may be established through a person's knowledge and participation in the criminal scheme even though there is no evidence of direct participation in the criminal act. (*People v. Dotson* (1986), 143 Ill. App. 3d 135, 492 N.E.2d 903.) Proof need not be in words but can be drawn from circumstances surrounding the commis-

sion of the act. (*People v. Kirkwood* (1980), 82 Ill. App. 3d 252, 402 N.E.2d 677.) While mere presence at the scene of the crime is not sufficient (*People v. Tucker* (1974), 20 Ill. App. 3d 377, 314 N.E.2d 276), the trier of fact may consider factors such as the defendant's presence during the crime, acts performed after the commission of the crime and flight from the scene as evidence of accountability. (*Dotson*, 143 Ill. App. 3d at 142.) The trier of fact may also consider the defendant's presence without disapproving or opposing the principal perpetrator's actions in connection with other circumstances and conclude that the defendant aided and abetted the crime. *People v. Cleveland* (1986), 140 Ill. App. 3d 462, 488 N.E.2d 1276.

■ The complaining witness said that "two gentlemen appeared from nowhere and said it was a stick-up." He said the first stepped in his path from behind the building and the second man "was right with him." Later he said, "They stepped out together." We believe the evidence establishes that the two men were acting in concert. Moreover, the fact that the defendant made an inherently incredible prearrest statement may be considered evidence of consciousness of guilt. (*People v. Wilson* (1972), 8 Ill. App. 3d 1075, 291 N.E.2d 270.) We reject the defendant's argument that he was not proved guilty beyond a reasonable doubt.

The next issue involves the plea of guilty. The defendant was found guilty of attempted armed robbery and aggravated battery in the case involving McKinley Murray on October 18, 1985. On April 23, 1986, he pleaded guilty to other charges, armed robbery, armed violence and aggravated battery. Immediately after sentencing the defendant, the trial court vacated the plea and sentence after remarks by the defendant's attorney indicating that he wanted to appeal the conviction.

Five days later, on April 28, the defendant again withdrew his plea of not guilty and asked leave to plead guilty. After warning the defendant, the court accepted the plea and sentenced him. On May 1, the defendant filed a motion to withdraw his plea of guilty. That motion, which was prepared by the same attorney who represented the defendant at trial, alleged that his plea was obtained by "fraud and material misrepresentations made to him by the court, his attorney and other persons *** and by coercion perpetrated by his attorney, court and other persons." It was signed by the assistant public defender that had represented him at the trial. On June 5, the defendant appeared again with the same assistant public defender, who informed the court that he had prepared the motion and that he wanted to amend the motion by deleting the phrase "and other persons" from

the motion to withdraw. The following occurred:

"DEFENSE ATTORNEY: Now, Judge, as you can see, essentially it's me who is accused of perpetrating this fraud and engaging in this coercion.

THE COURT: Me too.

DEFENSE ATTORNEY: But he can't quite decide whether or not it's the fact that I—that you tricked him or that I misrepresented what you said to him, and that tricked him and coerced him. That's the way we left that. That being the case I don't think it's proper for me to argue the motion, but I think he is capable of telling you why he was tricked into making this plea."

The court then told the defendant to go ahead, "Argue your motion." Colloquy ensued between the court and the defendant, and the assistant public defender interjected, "I think he's eligible for extended term." The assistant public defender continued to address the court:

"DEFENSE ATTORNEY: He believes either one of two things happened. Either it was improper for you to tell what sentence he would get on the other case in order to induce him to plead on the other case, or in the alternative, that you didn't say that, but I invented it and brought it to him, and continues to overbear as well. That's the essence of this complaint."

More colloquy then occurred between the court and the defendant, and the defendant informed the court that he believed that his attorney was tricking him because he told his attorney, "[F]rom day one, I wanted to take the case to trial." He also said, "[T]he case that I copped out for I didn't want to cop out for it." The court then vacated the plea and set the case for trial on July 7. It instructed the assistant public defender to have another assistant public defender assigned to represent the defendant. The following day, the court informed the defendant that it was vacating the order entered the day before and set the matter for June 9. On June 9 the defendant appeared with two assistant public defenders, including the one who had represented him at the trial. The court referred to the motion to withdraw and the defendant's allegation that his attorney had made misrepresentations that required him to plead guilty. The court then recited all of the questions it had previously asked the defendant before accepting his plea: It had asked if the defendant had discussed the matter with his attorney and believed his attorney had given good advice, if any threats of violence had been made or if any promises had been made to him other than the agreed sentence. The court recalled that the

defendant had answered in the negative to all of those questions and then denied the motion to vacate.

The defendant contends that he is entitled to a new hearing on his motion to withdraw his guilty plea on the ground that his attorney had a conflict of interest and that he was denied effective assistance of counsel at the hearing on his motion to withdraw. We agree. In *People v. Norris* (1977), 46 Ill. App. 3d 536, 361 N.E.2d 105, the court held that an attorney must ask for leave to withdraw and ask for an appointment of new counsel if he knows he should be called as a witness at the hearing on the motion to withdraw. The assistant public defender in this case recognized that a conflict of interest existed, but he not only failed to ask for leave to withdraw and appointment of new counsel, he actively participated in the hearing.

In *People v. Willis* (1985), 134 Ill. App. 3d 123, 479 N.E.2d 1184, the same assistant public defender who represented the defendant on his plea of guilty continued to represent him on his motion to vacate. The appellate court vacated a plea of guilty and remanded for a new hearing on the defendant's claim that his plea was involuntary and that he was denied effective assistance of counsel.

The State argues that the motion to withdraw was defective on its face since it did not plead factual allegations nor was it supported by affidavit as required by rule. The State's argument buttresses the defendant's position, since the concededly defective motion was prepared by the assistant public defender who was alleged to have tricked or coerced the defendant into pleading guilty. The question whether the assistant public defender actually made misrepresentations to the defendant or "coerced" him into pleading guilty contemplates the assistance of counsel at a hearing on the motion to withdraw the guilty plea. The assistance should be free of any conflict of interest. A new hearing with appointed counsel other than the public defender's office is required. *Willis*, 134 Ill. App. 3d at 133.

The defendant also contends that the trial court did not admonish him of the consequences of his plea in accordance with Supreme Court Rule 402(b) (87 Ill. 2d R. 402(b)).

We believe that the court's admonishments were in substantial compliance with the rule and discussion of all of the instances of alleged error would unduly lengthen this opinion. We will, however, discuss one. The defendant contends that the court failed to state the terms of the plea agreement in open court.

In considering claims under Rule 402, the entire record may be considered (*People v. Krantz* (1974), 58 Ill. 2d 187, 317 N.E.2d 559), and the remarks and advice of the court must be read in a practical

and realistic manner. If an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule, the essentials have been complied with. *People v. Sutherland* (1984), 128 Ill. App. 3d 415, 470 N.E.2d 1210.

When the defendant first pleaded guilty on April 23, the judge said that sufficient facts had been shown to him in chambers to support the plea. Later, he said he was sentencing the defendant "pursuant to the agreement with the State." When the defendant's attorney indicated that he would appeal, the judge said that he would vacate the plea and sentence the defendant on the charges for which he had been found guilty. He said that he had "told everybody in both cases." The assistant State's Attorney said the following:

> "Judge, if I may, also, the recommendation by us with respect to the sentence on [Indictment] 2635 was contingent on the plea of the other case, so I will ask not to—
>
> * * *
>
> Well, Judge, our recommendations on sentencing for that particular case was predicated on his plea on the other case, so we are asking that you vacate that sentence, also. Also, we wish to pursue aggravation in that matter, and call witnesses."

■ On April 28, when the defendant again pleaded guilty, the court again admonished him and again said that there was a sufficient factual disclosure made to the court during the course of a conference. He said, "Pursuant to the conference," and again sentenced the defendant to eight years on armed robbery and on armed violence and five years on aggravated battery, all to run concurrently with each other and with the sentence previously imposed on the finding of guilty. We believe that the entire record would show an ordinary person in the circumstances of the accused that there was an agreement between his attorney, the State's Attorney and the court and that the sentence he was receiving was in accordance with that agreement.

■ The defendant next contends that his plea of guilty must be vacated because the court lacked jurisdiction to sentence him for both armed robbery and armed violence since the crimes arose out of a single physical act. Since we are vacating the judgment based on the plea of guilty and remanding for a new hearing on the motion to withdraw the plea, we need not address this argument. We cannot predict what the court's ruling may be on the motion to withdraw the plea. In the event that the plea is withdrawn, the State may proceed on the indictment as it sees fit. We note, however, that the State concedes here that a conviction of both armed robbery and armed violence based on that armed robbery cannot stand, recognizing *People v.*

*Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477. Therefore, if the court denies the motion to withdraw the plea of guilty, it shall vacate the judgment of conviction of armed violence.

■ The defendant next contends that the court erred in convicting him of multiple counts of aggravated battery where the offenses arose from a single physical act. Count II charged the defendant with a violation of chapter 38, section 12—4(a) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(a)). Count III charged the defendant under chapter 38, section 12—4(b)(1) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(1)). Count V charged the defendant with a violation of chapter 38, section 12—4(b)(8) (Ill. Rev. Stat. 1985, ch. 38, par. 12—4(b)(8)). All the counts alleged the use of a gun and all alleged the imposition of great bodily harm. We agree with the defendant. (*People v. Palmer* (1982), 111 Ill. App. 3d 800, 444 N.E.2d 678.) Our reading of the sentencing order indicates that the defendant was sentenced on three counts of aggravated battery. Therefore, *People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223, cited by the State, is not apposite. We therefore vacate the judgments of conviction on counts III and V.

Lastly, the defendant contends that the order revoking his probation should be reversed.

On September 20, 1984, Judge Steven A. Schiller sentenced the defendant to 30 months' probation with the first six months to be served in the county jail. On March 8, 1985, a petition for revocation of probation was filed. A hearing was conducted on July 18, 1986, at which the State introduced certified copies of the defendant's convictions in the bench trial and on his plea of guilty before Judge Mahon. Judge Schiller entered an order revoking the defendant's probation and imposed a sentence of four years, the term to be served consecutively to the terms Judge Mahon imposed in the other two cases.

■ Since we have affirmed the conviction of attempted armed robbery and one count of aggravated battery, the order of revocation of probation will be affirmed. However, since we cannot determine what weight Judge Schiller gave the conviction based on the defendant's plea of guilty, we vacate the sentence imposed by Judge Schiller and remand for a new sentencing hearing. Judge Schiller may reserve any action until after the hearing on the motion to withdraw the plea of guilty is heard or he may proceed in a manner he deems appropriate before the hearing.

Therefore, in appeal No. 86—1081, the judgment of conviction of attempted armed robbery is affirmed, and the judgment of conviction of aggravated battery is affirmed in part and vacated in part. In appeal No. 86—1579, the judgment of convictions of armed robbery,

armed violence and aggravated battery are vacated and remanded for a new hearing on the defendant's motion to withdraw his plea of guilty with directions to appoint an attorney other than the public defender and to thereafter require such counsel to file the certificate in compliance with Rule 604(d) as a condition precedent to ruling on the motion. (*People v. Norris* (1977), 46 Ill. App. 3d 536, 542, 361 N.E.2d 105.) If the court denies the motion to withdraw, it is directed to vacate the conviction of armed violence. In appeal No. 86—2070, the judgment of conviction is affirmed in part, vacated in part and remanded for a new sentencing hearing.

No. 86—1081, Judgment affirmed in part and vacated in part.

No. 86—1579, Judgment vacated and remanded with directions.

No. 86—2070, Judgment affirmed in part, vacated in part and remanded.

HARTMAN, P.J., and BILANDIC, J., concur.